IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LANCE RIVERS, | ) | |
| | ) | |
| Plaintiff, | ) | 8:03CV162 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| FATHER FLANAGAN'S BOYS HOME, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the plaintiff's Motion to Appoint a Guardian ad litem (Filing No. 76). The plaintiff also filed notice of the proposed guardian. **See** Filing No. 79. The defendant opposes both the appointment of a guardian (Filing No. 78) and the specific guardian chosen by the plaintiff (Filing No. 80). The plaintiff did not file a reply brief.

## BACKGROUND

On April 24, 2003, the plaintiff brought the instant action alleging claims for assault and battery; intentional infliction of emotional distress; negligent hiring, retention and supervision; and breach of trust. **See** Filing No. 1. These claims are based on the plaintiff's assertions that between 1981 and 1983, while the plaintiff was a resident at Boys Home, the plaintiff was physically and/or sexually abused on multiple occasions by Michael Wolf, who used his office and position with the defendant to befriend the plaintiff, engage his trust and cause his compliance. On September 8, 2003, the plaintiff's claim for breach of confidence/trust was dismissed. **See** Filing No. 12. On December 10, 2003, the court entered an initial progression order setting preliminary deadlines for the case. **See** Filing No. 30.

On March 11, 2004, the plaintiff sought a stay of all proceedings because he had been involved in a life-endangering automobile accident and was unable to communicate effectively with counsel. **See** Filing No. 35. The stay was granted and extended until September 29, 2004. **See** Filing Nos. 36, 40, 43, and 47. On April 7, 2005, the plaintiff

again sought a stay of proceedings because the plaintiff was "mentally incapacitated" and had been involuntarily committed to a hospital for mental health reasons and drug rehabilitation.  **See** Filing No. 61.  The second stay was granted, which continued until February 28, 2006.  **See** Filing Nos. 65, 75.  Thereafter, the plaintiff filed the instant motion for a guardian *ad litem* to be appointed.  **See** Filing No. 76.

The plaintiff contends a guardian *ad litem* should be appointed because the plaintiff is incompetent.  The plaintiff states he is currently institutionalized and suffering from bipolar disorder.  However, the plaintiff's treating physician believes that the plaintiff will be able to participate in the lawsuit, with assistance.  Specifically, on February 8, 2006, psychiatrist John C. Burr, M.D., stated the plaintiff suffers from Bipolar I Disorder, for which the plaintiff takes medications, and Posttraumatic Stress Disorder.  **See** Filing No. 76, Exhibit 2.  Dr. Burr last saw the plaintiff on February 7, 2005, and found the plaintiff to be healed from his injuries and "in good contact with reality, and stable of mood . . . This is the most stable and rational that I have seen him since he first came to this clinic."  *Id.*  Dr. Burr concludes, "I believe Mr. Rivers to be as stable as possible to deal competently with the court action as outlined in deposition and in testimony, if required.  The former he can do here with support.  The court testimony might need support also, but not necessarily a guardian."  *Id.*  The plaintiff also presents the March 16, 2005, deposition testimony of Bruce Gutnik, M.D., who performed a psychiatric evaluation of the plaintiff.  Dr. Gutnik testified:

> It appears from the history he provided to me and the records that I have reviewed that he has hallucinations even when not in manic episodes. That's why the schizoaffective diagnosis. I think that this is a guy who's going to have a tough time functioning without some support from others.  I think he's a really sick young man.

**See** Filing No. 76, Exhibit 3 at 39:23 to 40:6.  Dr. Gutnik further states, "I would have to assume that if he's on appropriate medications and he is not in an active manic or depressive state, that he can probably manage to get along."  *Id.* at 39:12 to 39:15.

The defendant opposes the appointment of a guardian *ad litem*.  The defendant contends the statements by Dr. Burr and Dr. Gutnik show that the plaintiff is not

incompetent. Further, the defendant argues the plaintiff has not met his burden of showing the necessity for a guardian *ad litem* under Nebraska law. The defendant contends the proposed guardian, Kenneth Pickens, has a conflict of interest in this matter because a former partner with Pickens Daubman Green Group LLP, Thomas A. Gleason, is currently with counsel for the defendant in this matter. **See** Filing No. 80.

## ANALYSIS

A court may, in its discretion, appoint a guardian *ad litem* pursuant to Rule 17(c). **M. S. v. Wermers**, 557 F.2d 170, 174 (8th Cir. 1977); **see Allen v. Calderon**, 408 F.3d 1150, 1154 (9th Cir. 2005). Federal Rule of Civil Procedure 17(c) provides:

> Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian *ad litem*. <u>The court shall appoint a guardian *ad litem* for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person</u>.

Fed. R. Civ. P. 17(c) (emphasis added).

Thus this court must determine whether the plaintiff is incompetent and requires the appointment of a guardian *ad litem* under Rule 17(c). State law provides the controlling authority for determining whether an individual has capacity to sue on his own behalf. **See** Fed. R. Civ. P. 17(b) (stating "[t]he capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile"); **Thomas v. Humfield**, 916 F.2d 1032, 1034-35 (5th Cir. 1990) (finding state law the proper source for determining whether an individual is incompetent and in need of a guardian *ad litem* under Rule 17(c)); Charles Alan Wright, et al., 6A Federal Practice & Procedure: Civil 2d § 1548 at 372 (1990) ("State substantive law usually provides that the general guardian of a minor or incompetent has the legal right to maintain an action in his own name for the benefit of his ward. Under a rule or statute of this type the general guardian is the real party in interest for purposes of Rule 17(a) . . . ."); **see also Neilson**

***v. Colgate-Palmolive Co.***, 199 F.3d 642, 656-57 (2d Cir. 1999) (noting that capacity to sue is determined by reference to state law, and discussing the capacity of a representative to sue in federal and state proceedings).

Because it is unclear where the plaintiff is domiciled, the court will evaluate the plaintiff's motion under both Nebraska law and Arizona law. The complaint in this matter states the plaintiff is a citizen of the State of Arizona. **See** Filing No. 1 ¶ 3.

The court turns then to Arizona law to determine whether the plaintiff requires the representation of a guardian in this action. Pursuant to Arizona statute:

> At any point in a proceeding, a court may appoint a guardian *ad litem* to represent the interest of a minor, an incapacitated, unborn or unascertained person, . . . if the court determines that representation of the interest otherwise would be inadequate. . . . The court shall set out its reasons for appointing a guardian *ad litem* as a part of the record of the proceeding.

Ariz. Rev. Stat. Ann. § 14-1403(4).

Similarly, under Nebraska law

> The court may appoint a guardian if it is satisfied by clear and convincing evidence that the person for whom a guardian is sought is incapacitated and that the appointment is necessary or desirable as the least restrictive alternative available for providing continuing care or supervision of the person of the person alleged to be incapacitated. If the court finds that a guardianship should be created, the guardianship shall be a limited guardianship unless the court finds by clear and convincing evidence that a full guardianship is necessary.

Neb. Rev. Stat. Ann. § 30-2620 (2001).

An incapacitated person is defines as follows:

> "Incapacitated person" means any person who is impaired by reason of mental illness, mental deficiency, mental disorder, physical illness or disability, chronic use of drugs, chronic intoxication or other cause, except minority, to the extent that

4

> he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person.

Ariz. Rev. Stat. Ann. § 14-5101(1).[1]

Accordingly, the plaintiff must show by clear and convincing evidence that the plaintiff is impaired by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, or other cause that he lacks capacity to make or communicate responsible decisions concerning himself.  Furthermore, the power given to a district court to appoint a guardian *ad litem* "has been broadly interpreted and has not been limited by a narrow construction of the words 'infant' or 'incompetent person.'"  Charles Alan Wright, et al., 6A Federal Practice & Procedure: Civil 2d § 1570 (1990).

The court's primary concern is protection of the interests and rights of the allegedly incompetent individual when determining competency and who should serve as the individual's guardian or next friend.  **See *Fonner v. Fairfax County, VA***, 415 F.3d 325, 330 (4th Cir. 2005) ("'[t]he federal district court may, of course, appoint a guardian *ad litem* in its discretion' where the district court believes the appointment is in the infant or incompetent's interests.").

> There are no special requirements for serving as a next friend. At its discretion, the court may consider whether there is a significant relationship between the next friend and the incompetent party and whether there is a legitimate reason why the actual party cannot bring suit.  The court may also consider evidence as to whether the incompetent party approves of the suit in question.

*Ingram ex rel. Ingram v. Ainsworth*, 184 F.R.D. 90, 92 (S.D. Miss. 1999) (internal citations omitted).  However, the court must set forth specific reasons requiring the appointment.  *Matter of Ray's Estate*, 560 P.2d 1255 (Ariz. App. 1976).

Here, the plaintiff instigated the action himself, but has since sought extended stays of the matter due to periods of physical or mental injury.  The plaintiff, himself, did not sign an affidavit agreeing with his attorney that he needs a guardian *ad litem* appointed to assist him with his preparation of this case.  However, counsel states the plaintiff "wishes that this

---

[1] The Nebraska statute is virtually identical.  **See** Neb. Rev. Stat. Ann. § 30-2601.

case be allowed to proceed." **See** Filing No. 76, p. 2. Further, counsel states that "counsel for Mr. Rivers believes that a guardian *ad litem* should be appointed." *Id.* The support for the plaintiff's motion is in the form of the deposition of a doctor taken over one year ago and a letter from another doctor describing events in mid 2005. The opinions do not state the plaintiff is incompetent or would benefit from a guardian *ad litem*.

Based on the evidence before the court, the court finds the plaintiff has not met his burden of showing clear and convincing evidence that he is in competent or impaired by a mental disorder. Nor has the plaintiff shown that due to an impairment it is necessary or desirable for the plaintiff to be appointed a guardian *ad litem* for the limited purpose of representing his interest in this lawsuit. Accordingly, the court need not determine whether Mr. Pickens is an appropriate guardian.

**IT IS ORDERED:**

1. The plaintiff's Motion to Appoint a Guardian *ad litem* (Filing No. 76) is denied.

2. A **telephone** conference with the undersigned magistrate judge is set for **April 18, 2006 at 3:30 p.m. Central Daylight Time**, to schedule progression of the case to trial. Plaintiff's counsel shall initiate the telephone conference.

**ADMONITION**

Pursuant to NECivR 72.2 any appeal of this Order shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Order. Failure to timely appeal may constitute a waiver of any objection to the Order. The brief in support of any appeal shall be filed at the time of filing such appeal. Failure to file a brief in support of any appeal may be deemed an abandonment of the appeal.

DATED this 3rd day of April, 2006.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge